1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

11

12

13

14

15

16

CURTIS S. THOMPSON,

Plaintiff,

v.

SCOTT O'TOOLE, *et al.*,

Defendants.

CASE NO.  C05-2064-JLR-MJB

REPORT AND RECOMMENDATION

17

INTRODUCTION AND SUMMARY CONCLUSION

18

19

20

21

22

23

24

This is a civil rights action brought under 42 U.S.C. § 1983.  Plaintiff is currently

incarcerated in the King County Correctional Facility (KCCF) in Seattle, Washington where he is

awaiting trial on various felony criminal charges.  Plaintiff alleges in his amended civil rights

complaint that Seattle Police Officer Randall Higa used an excessive amount of force in arresting

him.  He further alleges that he was twice assaulted by KCCF corrections officers while he was in

handcuffs and posed no threat to anyone.  Defendant Higa has now filed a motion for summary

judgment.  (Dkt. No. 43.)  The Court, having reviewed defendant Higa's motion, and the balance of

25

26

REPORT AND RECOMMENDATION
PAGE - 1

1  the record, concludes that defendant Higa's summary judgment motion should be granted and that

2  plaintiff's amended complaint should be dismissed, with prejudice, as to this defendant.

3                                                    FACTS

4           On August 23, 2004, defendant Randall Higa was dispatched to respond to a 911 call

5  reporting that an unknown male had forced two women into an elevator.  (*See* Dkt. No. 44-3 at 2;

6  Dkt. No. 46 at 1; Dkt. No. 62-2 at 10.)  Officer Jonathan Huber was dispatched to back-up defendant

7  Higa.  (Dkt. No. 44-4 at 2; Dkt. No. 45 at 1.)  Defendant Higa and Officer Huber arrived at the

8  scene, an apartment building, at approximately the same time.  (Dkt. No. 46 at 1.)  Upon their

9  arrival, the officers were met by two distressed and frantic women who quickly led the officers

10 around the building to the entrance where the incident had occurred.  (Dkt. No. 45 at 1-2.; Dkt. No.

11 46 at 1-2.)  As the officers approached the building they heard loud screaming and saw a woman

12 running toward the exit door in the lobby of the apartment building and toward the officers.  (*See*

13 Dkt. No. 45 at 2; Dkt. No. 46 at 2.)  The woman was not wearing a shirt and was being followed by a

14 large man who was later identified as plaintiff Curtis Thompson.  (*Id.*)  The women outside of the

15 building identified plaintiff as the man who had "done it."  (*See* Dkt. No. 45 at 2; Dkt. No. 46 at 2.)

16          The officers drew their weapons and ordered plaintiff to stop.  (*See id.*)  Plaintiff failed to

17 comply and continued to run through the door and onto the street.  (*See id.*)  The officers holstered

18 their weapons and defendant Higa grabbed plaintiff's shirt which ripped as plaintiff ran by him.

19 (Dkt. No. 46 at 2.)  Officer Huber pursued plaintiff and grabbed him.  (Dkt. No. 45 at 2; Dkt. No. 46

20 at 2.)  Officer Huber and plaintiff then fell to the ground where plaintiff began punching Officer

21 Huber in the head.  (*See id.*)  Officer Huber was having trouble holding plaintiff down because of his

22 large physical size, and he repeatedly punched plaintiff in his upper torso and head area with his fist

23 in an attempt to gain control of him.  (Dkt. No. 44-4 at 2.)  This was apparently ineffective.  (*See id.*)

24

25

26 REPORT AND RECOMMENDATION
   PAGE - 2

1    Defendant Higa arrived to provide assistance.  Defendant Higa attempted to grab plaintiff's

2  legs, but plaintiff was kicking and flailing his legs.  (*See* Dkt. No. 44-3 at 2.)  Defendant Higa struck

3  plaintiff in his calves and thighs with his fist in an attempt to gain control of plaintiff, but defendant

4  Higa got no compliance.  (*Id*.)

5    Plaintiff made threats to kill the officers as he continued to struggle with them.  (*See* Dkt. No.

6  45 at 2; Dkt. No. 46 at 2.)  Both defendant Higa and Officer Huber state that plaintiff showed no

7  interest in trying to escape but, rather, seemed intent on fighting it out with them.  (*See id.*)

8    According to Officer Huber, plaintiff grabbed his firearm and attempted to work it out of the

9  holster.  (*See* Dkt. No. 44-4 at 2; Dkt. No. 45 at 2.)  As officers continued to struggle with plaintiff,

10  they took out their flashlights and began to strike plaintiff.  (Dkt. No. 45 at 2; Dkt. No. 46 at 2.)

11  Defendant Higa struck plaintiff in the calves and thighs while Officer Huber struck plaintiff in the

12  area of his upper back and head in an effort to gain compliance.  (*See id*.)  The officers eventually

13  managed to get plaintiff into handcuffs.  (*See id*.)  Plaintiff continued to struggle and to make threats

14  even after officers placed him in handcuffs.  (*See id*.)

15    The Seattle Fire Department responded to the scene and administered aid to plaintiff and to

16  the officers.  (Dkt. No. 46 at 3.)  Plaintiff was transported to Harborview Medical Center where he

17  was treated for lacerations to the back of his head.  (Dkt. No. 71 at 11-12.)  Plaintiff was placed in

18  four point restraints while at Harborview where he continued to threaten to kill the police officers

19  present there.  (Dkt. No. 45 at 3.)  Defendant Higa suffered temporary pain and soreness in his legs,

20  arms, and hands as a result of the altercation.  (Dkt. No. 46 at 3.)  Officer Huber suffered an inch

21  long cut to his left temple.  (*See* Dkt. No. 62-2 at 10.)

22    Plaintiff was ultimately charged with 11 counts arising out of the events of August 23, 2004,

23  including burglary in the first degree with sexual motivation, robbery in the second degree, assault in

24  the second degree with sexual motivation, attempted indecent liberties, unlawful imprisonment,

25

26  REPORT AND RECOMMENDATION
   PAGE - 3

1    assault in the third degree, and disarming a law enforcement officer.  (Dkt. No. 44-5 at 2.)  Plaintiff

2    is currently awaiting trial on those charges in King County Superior Court.

3        Plaintiff filed his original civil rights complaint in December 2005.  (*See* Dkt. Nos. 1 and 6.)

4    Because of deficiencies in that complaint, the Court declined to serve the complaint, but granted

5    plaintiff leave to amend.  (Dkt. No. 7.)  Plaintiff filed an amended complaint in February 2006.

6    (Dkt. No. 10.)  In May 2006, the Court ordered service of plaintiff's amended complaint on some of

7    the defendants, but dismissed other defendants.  (Dkt. No. 14.)  Among the defendants who were

8    dismissed from the action at that time were the Seattle Police Department and Seattle Police Chief

9    Gil Kerlikowski.  (*Id.*)  Defendant Higa is the only defendant remaining in this action who had any

10   involvement in plaintiff's arrest.

11       Defendant Higa filed his summary judgment motion in September 2006.  (Dkt. No. 43.)  He

12   argues therein that his conduct did not violate any constitutional right.  (*Id.*)  He further argues that

13   even if the Court determines that his conduct violated plaintiff's constitutional rights, he reasonably

14   believed that his conduct was lawful and, thus, he is entitled to qualified immunity.  (*Id.*)  In

15   conjunction with his summary judgment motion, defendant Higa filed a motion to stay discovery

16   pending this Court's decision on whether he is entitled to qualified immunity.  (Dkt. No. 41.)

17       Plaintiff filed objections to defendant Higa's motion to stay in which he argues that he is

18   entitled to discovery before any judgment is entered.  (*See* Dkt. No. 49.)  He filed these objections in

19   conjunction with a motion to compel discovery.  (*See id.*)  Plaintiff thereafter filed a document

20   entitled "Motion Against Judgment" in which he asserts that he has documents in his possession

21   which show that officers Higa and Huber used excessive force and that he needs additional discovery

22   before judgement is rendered in this case.  (Dkt. No. 55.)  In conjunction with his motion against

23   judgment, plaintiff filed a motion to amend his complaint to add Officer Huber as a defendant in this

24   action and another motion to compel discovery.  (Dkt. Nos. 53 and 54.)  Most recently, plaintiff

25

26   REPORT AND RECOMMENDATION
     PAGE - 4

1   submitted additional evidence in support of his objections to the summary judgment motion.  (Dkt.

2   No. 71.)  Defendant Higa has filed a sur-reply in which he asks that plaintiff's supplemental evidence

3   be stricken as untimely.  (Dkt. No. 72.)  Defendant also asserts in his sur-reply that this supplemental

4   evidence does not support plaintiff's contention that there are issues of fact which prevent summary

5   judgment.  (*Id.*)

6                                                    DISCUSSION

7                                           Summary Judgment Standard

8              Summary judgment is appropriate when, viewing the evidence in the light most favorable to

9    the nonmoving party, there exists "no genuine issue as to any material fact" such that "the moving

10   party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A material fact is a fact

11   relevant to the outcome of the pending action.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

12   248 (1986).  Genuine issues of material fact are those for which the evidence is such that "a

13   reasonable jury could return a verdict for the nonmoving party."  *Id.*

14             In response to a properly supported summary judgment motion, the nonmoving party may not

15   rest upon mere allegations or denials in the pleadings, but must set forth specific facts demonstrating

16   a genuine issue of fact for trial and produce evidence sufficient to establish the existence of the

17   elements essential to his case.  *See* Fed. R. Civ. P. 56(e).  A mere scintilla of evidence is insufficient

18   to create a factual dispute.  *See Anderson*, 477 U.S. at 252.  In ruling on summary judgment, the

19   court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether

20   there is a genuine issue for trial."  *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994).

21                                             Qualified Immunity

22             Defendant Higa argues in his summary judgment motion that his conduct did not violate any

23   constitutional right.  He further argues that even if his conduct did violate plaintiff's constitutional

24   rights, he is entitled to qualified immunity because he reasonably believed that his conduct was

25

26   REPORT AND RECOMMENDATION
     PAGE - 5

1    lawful.  Qualified immunity protects § 1983 defendants performing discretionary functions from

2    liability for civil damages so long as their conduct does not violate a clearly established constitutional

3    or statutory right of which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S.

4    800, 818 (1982).  Qualified immunity provides protection "to all but the plainly incompetent or those

5    who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

6         In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court clarified the test to be applied in

7    evaluating claims of qualified immunity.  The threshold inquiry in a qualified immunity analysis is

8    whether the facts alleged, when taken in the light most favorable to the party asserting the injury,

9    show that the defendant's conduct violated a constitutional right.  *Id*. at 201.  If the reviewing court

10   concludes that no constitutional right was violated by the defendant's conduct, the court need not

11   inquire further.  *Id*.  However, if the reviewing court concludes that a constitutional right was

12   violated, the court must then determine whether the right was clearly established.  *Id*.  And, "[t]he

13   relevant, dispositive inquiry in determining whether a right is clearly established is whether it would

14   be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Id*. at

15   202.

16                                        Excessive Force

17        Plaintiff asserts in his amended complaint that his constitutional rights were violated when

18   defendant Higa employed "deadly force" with a flashlight while effectuating plaintiff's arrest.  (*See*

19   Dkt. No. 10 at 6.)  Claims that a law enforcement official used excessive force in the course of

20   making an arrest are analyzed under the Fourth Amendment and its "reasonableness" standard.  *See*

21   *Graham v. Conner*, 490 U.S. 386, 395 (1989).  In *Graham*, the Supreme Court explained that

22   determining whether a particular use of force was "reasonable" under the Fourth Amendment

23   "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth

24   Amendment interests against the countervailing governmental interests at stake."  *Graham*, 490 U.S.

25

26   REPORT AND RECOMMENDATION
     PAGE - 6

at 396 (internal quotations omitted).  Among the factors to be considered in evaluating a claim of excessive force are "whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*.  The Supreme Court made clear in *Graham* that "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene rather than with the 20/20 vision of hindsight." *Id*.

The record before this Court establishes that defendant Higa and Officer Huber responded to a call that a man had forced two women into an elevator.  After arriving at the scene, and being directed by witnesses to the entrance to the apartment building, they heard a woman screaming hysterically and they saw a woman without a shirt running towards them.  The woman was being followed by a large man.  The women at the scene identified that man as the one who had "done it."  That man was plaintiff.  The officers drew their weapons and instructed plaintiff to stop, but plaintiff did not comply and attempted to flee.  When the officers caught up with plaintiff, plaintiff struggled with them and refused to comply with their directives to stop resisting.  Plaintiff also threatened to kill the officers.  Plaintiff threw punches at the head of Officer Huber and kicked at defendant Higa. The officers struck plaintiff with their fists, but were still unable to gain compliance as plaintiff continued to resist.  Tiring from the struggle, and fearful that they were losing the fight, the officers struck plaintiff with their flashlights in an effort to gain compliance.  Defendant Higa struck plaintiff on the legs while Officer Huber struck plaintiff in the upper back and head.  Officer Huber's strikes enabled officers to finally gain control over plaintiff and put him in handcuffs.  Plaintiff and the officers all suffered apparently minor injuries as a result of the physical altercation.  See supra pp. 2-4.

Plaintiff, in his materials objecting to defendant Higa's summary judgment motion, appears to argue that he was not near the officers or victims and that he posed no threat to them.  He also offers

REPORT AND RECOMMENDATION
PAGE - 7

witness statements, not provided by defendants, which he appears to believe demonstrate that he did not resist. In fact, plaintiff's materials suggest, at most, that he posed no threat to officers before they attempted to apprehend him after they pursued him. He offers no evidence to refute the officers' statements that he resisted their attempts to take him into custody. This Court is satisfied, based on the record before it, that defendant Higa's actions were reasonable in the circumstances presented here and that he therefore did not violate plaintiff's constitutional rights. Because this Court concludes that defendant Higa's conduct did not violate plaintiff's constitutional rights the Court need not reach the second step of the qualified immunity analysis. Defendant's motion for summary judgment should be granted.

Other Pending Motions

As noted above, there are additional motions pending which are properly disposed of in conjunction with the pending summary judgment motion. Defendant has filed a motion to stay discovery pending resolution of the qualified immunity issue and plaintiff has filed motions to compel additional discovery related to the actions of defendant Higa, Officer Huber, and the Seattle Police Department. As this Court has concluded that defendant Higa is entitled to summary judgment with respect to plaintiff's excessive force claim, defendant Higa's motion to stay discovery is moot.

With respect to plaintiff's pending motions to compel, this Court concludes that those motions should be denied. In his first motion to compel (Dkt. No. 49), plaintiff seeks to compel production of records related to any disciplinary proceedings or court actions involving defendant Higa. However, such materials are not relevant to the question of whether defendant Higa's actions were reasonable on the night of August 23, 2004.

In his second motion to compel (Dkt. No. 53), plaintiff seeks to compel the production of all police and witness statements, photos, and video related to the incident. However, it appears from

REPORT AND RECOMMENDATION
PAGE - 8

1   the record that plaintiff already has in his possession a number of the witness statements sought as

2   they were included in the supplemental evidence submitted by plaintiff in support of his objections to

3   the summary judgment motion.  Nothing in the record suggests that the additional material being

4   sought by plaintiff is either in the care, custody, or control of defendant Higa, or that it will shed any

5   further light on the question of whether defendant Higa's conduct was reasonable on the night in

6   question.

7           Plaintiff also seeks leave to amend his complaint to add Officer Huber as a defendant in this

8   action.  However, the Court is satisfied, based on the record before it, that Officer Huber's conduct in

9   effectuating plaintiff's arrest was also reasonable in the circumstances presented here and, thus, that

10  Officer Huber did not violate plaintiff's constitutional rights.  Accordingly, plaintiff's motion to

11  amend his complaint is denied.

12          Finally, the Court declines to strike plaintiff's supplemental evidence as requested by

13  defendant Higa.  While that evidence was indeed untimely, defendant Higa suffers no prejudice by

14  allowing that evidence to remain in the record.

15                              <u>CONCLUSION</u>

16          For the foregoing reasons, this Court recommends that defendant Higa's motion for summary

17  judgment be granted.  This Court further recommends that defendant Higa's motion to stay discovery

18  be stricken as moot.  Finally, this Court recommends that plaintiff's motion against judgment,

19  motions to compel, and motion to amend be denied.  A proposed order accompanies this Report and

20  Recommendation.

21          DATED this 17th day of November, 2006.

22

23

24          MONICA J. BENTON
            United States Magistrate Judge

25

REPORT AND RECOMMENDATION
26  PAGE - 9